and the Hamburg Area School District, Mr. Spiker. Mr. Clark, please. Hi, I'm John Spiker and I'm representing Heather Kline, who is the plaintiff in this case, and I request two minutes of rebuttal time. That request will be granted. Thank you, Your Honor. Your Honor, the first issue that I want to deal with in this matter is the District Court's decision made on two different occasions to deny the plaintiff her rights to amend the complaint in this case. The first denial occurred 14 months into the case while discovery was still ongoing and prior to the defendant having taken any depositions whatsoever. That was done by Judge Gardner? That was done by Judge Gardner and the denial was in a telephone conference with the parties during which there was no enumeration made by Judge Gardner as to why the denial was being made, simply that he would allow us to refile a motion to amend the complaint later on in that year, in fact, at the end of the year in December. Now, by the time we got to December, additional discovery had gone on and, in fact, by that point, even though the plaintiff had taken numerous depositions, I believe probably about 20 by that point, the defendant had taken two. They had deposed Heather Klein and her mother, Stephanie Orn. Was it a real thrust to this case at first, an equal protection issue? Well, I think at first it was, but as happens so often in a case during discovery, you learn things and refocus the case, but in this case, I just wonder if you didn't learn and maybe you didn't have a case on equal protection because it seems to me that the equal protection argument, which was disposed of and apparently is not before us now, went to what happened the year after these allegations and charges were filed against Mr. Mansfield and the due district and what the principal did or didn't do during the course of time when Mansfield was a teacher in the middle school. And that certainly is true. Certainly the focus of this case, the damages that occurred to Heather, really were focused on what happened prior to the actual abuse by Mansfield and subsequent to her returning to school or prior to her returning to school in the next two years when she had the violations of equal protection. So, as what happened in this case, we got into discovery, we had depositions, we received documents from the school district, which clearly indicated that this was a case where the policies that the school district had were not being enforced, that it had very few policies at all, and it had totally inadequate training of teachers and the administration to deal with and recognize possible sexual predators. This is a case where Mr. Mansfield, for a period of five years, was grooming Heather to end up being his ultimate sexual victim, which occurred in the latter part of her seventh grade year. During this time, and particularly during seventh grade year, there were numerous policies that were either being completely ignored by the school district or being only given token application. And it was our position that we should have been allowed to amend the complaint, which under Rule 15 should be freely granted by the court. Well, if we agree with you, and I feel as if I probably would have allowed you to amend your complaint if I were the district judge. But we're dealing with a case here. Is that harmless error? Because even in the disposition of the matter, the judge, in his opinion, dealt with the law. And it was part and parcel of your failure to train a case and the other aspects of your case that this all came out, so to speak, in the wash and was actually dealt with by the judge in the opinion on summary judgment. Well, quite frankly, I think when you get to Judge Rappaport's decision in summary judgment, you see how he deals with Judge Gardner's decision. Judge Gardner, in the second denial of our motion to amend, indicates, and I believe your Honor is referring to this, he says at one point, it's in a footnote, he says, your complaint puts the defendants on notice of the claims of the inadequacy of training and the inadequacy of the policies and the failure to enforce the policies. They didn't file a 12B6 motion. Therefore, you have that. When you get to Judge Rappaport's opinion, however, on summary judgment, and you look at it, he's saying, well, what you don't have is you don't have substantive due process. He clearly limits you to equal protection and rights of privacy under his opinion. And therefore, you're out. Yeah, but doesn't he analyze it, as Judge Cowen alluded to, under the Resplandiat Superior analysis and really touch on the basis of the 14th Amendment violations under the substantive due process clause? Well, I think he does not. I think he indicates that we don't have a substantive due process claim. Yeah, but then he analyzes the fundamentals of that claim in his opinion. Well, and I respectfully suggest that if you look at the record in this case relative to due process, that Judge Gardner really was looking at the record in a light most favorable to the Hamburg School District and not to Heaven. No, you mean Judge Rappaport. I'm sorry, Judge Rappaport. All right, so we're down to a situation here where essentially I think you have to the Monel and the failure to train, but also substantive due process. And your position is that he took license with the facts that were before the court and improperly adjudicated those three claims. Well, absolutely. And your Honor, in support of that, when you look at the evidence that was on the record on behalf of the plaintiff dealing with the policies and training, what you see in this school is that they had a policy that sixth graders were not supposed to be in seventh grade hallways. Seventh graders were not supposed to be in sixth grade hallways and so on. And yet virtually every day of the school year, Heather would get off the bus, go right past the monitors, and go down and see Mr. Mansfield. She went down during study halls. She went down at the end of the day. Wait a minute. We're talking about an area where you have the burden of proving deliberate indifference to an unreasonable risk of constitutional injury. That's correct, Your Honor. And that's why the district court may not have gotten it right, but it said this record will not support the finding of deliberate indifference. But when we're talking about because it's deliberate indifference to an unreasonable risk of a constitutional violation, we're talking here about sexual abuse and or other physical injury. And does it make sense to say that the non-enforcement of a traffic, hall traffic rule, has to provide some basis for inferring deliberate risk to sexual rape by sodomy or whatever by a teacher? Judge Stapleton, I believe what that began to do was to show the inability of the school district to enforce policies. They knew. The administration knew. And on four different occasions during that school year, first, the seventh grade disciplinarian, Brian Miller, and then on two different occasions, the principal went up to Mansfield and said basically, what is this girl doing in your room? She's not supposed to be down here. Cut it out. And they expressly testified that that was not because they had any concern about future sexual abuse of Heather. Well, they may want the court to believe that through their testimony. But I believe when you look at their conduct as a whole throughout that year, their claimed ignorance falls short of reality because after those four different times that he is specifically confronted by the administration, we get to March 14th. And on March 14th, Heather leaves the principal's office for another matter, doesn't go to band class. Instead, she sneaks off and goes down to Mansfield's room. And she's caught. The administration now knows that on at least five occasions, Mansfield has been insubordinate to the school administration for the sole purpose of being with a 12-year-old girl. Now, you may claim you don't know what's going on. But when you have a teacher being insubordinate on five different occasions so he can be with a 12-year-old girl, I think only an ostrich who has his head in the sand would not recognize that something untoward is happening. Curiously, at that point in time, instead of confronting Mr. Mansfield and saying, what don't you understand about leaving this 12-year-old alone? Instead of bringing him up to discipline him, the school district does nothing. It doesn't confront him. Amazingly, the school district at that point suspends Heather and tells her to come back the next week with a better attitude. Six days later, the white team, which is the part of the seventh grade that Heather was a part of, creates a policy saying Heather is not allowed in Mansfield's room for any reason. While the defendant would like you to believe that that's not a policy, Vice Principal McGorry admits that this was something done between the white team and the administration together. Amazingly, after creating a policy that's almost unheard of, where they ban a girl from going down to see a teacher for any reason, they don't tell Heather, they don't tell her mother, they don't tell the sixth grade teachers, and they don't tell Mansfield. They create a policy that they keep secret. Judge Rappaport, in his decision, says the first time the defendant administrators knew that anything was going on was when Mansfield was subsequently arrested. Well, part of our claim, and if you deal with Dr. Kent's reports, he indicates that if you are so blind that legitimately and truthfully you didn't see that, part of the problem is that you weren't adequately trained to see this because clearly, and I would ask the court, if you had a law clerk who was going to the daycare center of this court and playing with a little child every day and you were informed of it and you told your clerk to stay away and yet he still kept going down to play with this child, you begin to wonder why that person was completely insubordinate to you to be with this child. Let's take each of these claims in order. The failure to train, what did the administration have that would have put them on notice that there was this threat in the school that required teachers to be trained and sensitized to the conduct which Mansfield engaged in here? In other words, either expressly or by inference that they should have been on notice that the administration was required to train people that they have to be aware of sexual predators. Well, I think the first thing is that sexual abuse by teachers in the school systems throughout this country is so rampant that there is a need to train. Well, there is nothing that I have ever seen that says that every elementary school has to train all its teachers. It might be a good thing, I'm not saying it's not a good thing, but certainly it's not the law that every school district has to train its elementary and middle school teachers of the sensitivity to sexual predators. So I can't accept that. I'm saying what did this school district know that would have put them on notice that, hey, we have got to indoctrinate all of our personnel and teachers concerning this problem? Well, certainly they had a history of alleged sexual abuse dating back over 20 years with the assistant superintendent in this case. No, no, this is things that they were aware of at the time that... Yeah, and wasn't that so remote and so isolated that that doesn't make up any part of this case? Well, it didn't come out until this case. And I may agree with you that it is remote. Well, you continue to cite it, you just target it. It didn't come out until this case, well known about that prior conduct. Well, to just focus on what was going on at this year, Your Honor, I think again what was going on is that you had a breakdown with the school system where you had teachers and students basically where there was virtually no line separating the teachers from the students. And so the opportunity for a sexual predator like Mansfield to be there was great. And again, it's very difficult to... They had no information that Mansfield in any way had attempted to sexually abuse any other student either at the elementary school or the middle school, did they? No, they had no information. But again, if they had and they had still kept them in the school district, that would have been... Mr. Spiker, I know you're passionate about this case and I commend your passion and your efforts in this regard. But how... The issue for us, as Judge Stapleton has said, is deliberate indifference, it seems. And whether you're substantive due process for the court or not, how in the light of the case, I'm sure you're familiar with Beers Capital v. Wetzel, where this court did not find deliberate indifference under a set of facts which were much stronger than what you have here. How could we find deliberate indifference in this case? I think that was an Eighth Amendment case, if I'm not mistaken. I think the Beers case was an Eighth Amendment as opposed to a Fourteenth Amendment due process, I believe, Your Honor. Is there any difference? Well, I think certainly under the Fourteenth Amendment due process, and in the Carter v. City of Philadelphia, which is another case that was before this court, indicates where the risk of harm is great and obvious, that there is deliberate indifference. Okay. And when... If, in fact, it wasn't obvious in Beers v. Wetzel, where they had clear indications of sexual abuse, that was known by the administrators of the YDC, how can you say it's deliberately indifferent here when there were no facts known by anybody in the school system of potential sexual abuse involving Mansfield? Well, I guess, Your Honor, my response is that certainly through the conduct repeatedly in which this teacher was ignoring the commands and dictates of the administration so he could be with a 12-year-old girl, maybe someone didn't whisper in Padat's ear they're having sex, but it was so obvious to anyone who would have been able to apply a common-sense approach to what was going on, and any scintilla of training would have been able to put them on notice if they legitimately did not know. They certainly would have been on notice of what he was doing. Part of what a sexual predator does is continually takes baby steps or trial balloons, if you will, to try to see whether or not people notice it. And if he's not stopped at the first time, he takes another one. And if he's not stopped after the second time, he'll take another one. And in this case, clearly after March 14th, and he wasn't confronted after having Heather caught in his room while he was teaching another class, at that point, I figure, ironically, the one person who did have more information, it appears, and information that may have been far more relevant was Heather's mother. No question about it. But Heather's mother didn't approach the principal or the school district with this information to at least share with the school district information she had. And this was a case of mutual not sharing of information. Okay. So how do you hold the school district responsible when the mother had information that they didn't have for the conduct of the daughter? And vice versa. It went both ways. And if the school district had told the mother about what was going on as well, they might have been able to put two and two together, and the mother would have acted much more proactively much sooner. And she's left with the guilt for her own failures in that regard. Okay. But you say in one breath, you say anybody in common sense would know that this was just about to happen, and yet all of the teachers and even the mother had this information, and they did not see this as a potential risk, unreasonable risk of sexual abuse. I believe that's a jury question as to whether or not the teachers and the administration did see it, Your Honor, and that's why some re-judgment should not have been granted. It should have been left to a jury to decide. And as far as the mother, Your Honor, I agree with you. And I think, unfortunately, if she were here today, she would tell you she agrees with you. Okay. Thank you. All right. Mr. Spikers, thank you. We'll have you back for rebuttal. Ms. Hendricks? Good morning, Your Honors. My name is Anne Hendricks, and I represent the Hamburg Area School District and Dr. Joseph Podasik, who was the principal during the relevant time period. It was interesting to me, Judge Fischer, that you began your discussion with Mr. Spiker about saying, well, didn't this really begin as an equal protection claim? Because when I started the case, and particularly when we started discovery, to me it was a title IX claim. He had a title. There was a title IX claim to begin with, which he later dropped. But the discovery really revolved around that. As Judge Stapleton commented, there were perhaps 20 different school teachers deposed in this case where the plaintiff was searching for information of knowledge of what was going on between Troy Mansfield and Heather Klein. And it just wasn't there. These are common sense individuals, and they are indeed individuals that had training. In addition to the policies that this district had on generally sexual harassment, student sexual harassment policies that were board-approved policies that were included in faculty handbooks, there also was training. At the beginning of each school year, the superintendent, when he met with the faculty, discussed this issue with them specifically. Additionally, the administrators had special training by lawyers with expertise in this area to discuss this with them. The only training that there wasn't, that plaintiff's expert seems to think that there should be or that there is, is the ability to train people to spot pedophiles. And I suggest to you that we would all sleep soundly and we would all feel safer if there indeed was such training. You can't do it. You can look for certain things, and these teachers were trained how to do that. But what cannot escape here is that the only facts that this plaintiff had that they presented to Judge Rathbore was that Heather went down to Troy Mansfield's classroom. Why is that sufficient? The number of occasions where Heather was in his company violating school rules and the times that teachers observed that she was there an inordinate number of times in his classroom and in violation of the policy, the rules of the school, why shouldn't that have put the administration on notice? They weren't specifically told, but was there enough information there in which they should have inferred that there was something going on here which was improper? I don't think so, Your Honor, because it was not unusual. Heather was not the only one going to visit a teacher that she had before. Mr. Mansfield was her third grade teacher. She knew him. Mr. Mansfield testified that he had many students in his classroom that were not students of his at that time. Other teachers testified that it was not unusual for their students to come and see them. Yeah, once in a while, but they didn't hang out there like she continually was seen in his presence and in his classroom. She was, and contrary to what Mr. Spiker told you, her mother was aware of this. In fact, there was a meeting in January of 2002 with the white team that Heather's mother attended where Heather's mother, I believe, was the one who brought it up that she knew that Heather was visiting. The mother's culpabilities or problems are another story. The question here is why, with the number of times that she was in his company, in his classroom, why wouldn't I put a reasonable school district administrator on notice that this is something that can't be tolerated? Well, I think school districts, if that were the standard, which it has not been from this court, that then administrators were spending day after day investigating each and every teacher in each and every school district because it happens every time. Well, what is the standard from this court? I mean, how much does a student have to be seen or in proximity to a teacher having nothing to do with classroom attendance that puts an administration on notice that the school district ought to do something about this? Well, I don't think this court has ever held that just the teacher seeing a student is sufficient. I believe it was in Johnson v. Elk Lake School District that this court, where there was not only the guidance counselor frequently calling female students into his office, but also there was knowledge on the part of the school district that there were gift-givings and that the guidance counselor was walking too closely behind female students. And in that case, the court rejected the plaintiff's claim and said that that is not sufficient evidence of deliberate indifference. The court said in that case that absent direct complaints made to school officials, rumors do not constitute the kind of notice for which a school district can be held liable under Monell. We don't even have rumors in this case. And in that case, this court said that there's not sufficient evidence. In the Stoking case- They say she, your friend across the way, says that they did not only have notice, they had a policy in the white team that was developed in collaboration with the administration that resulted in the issuance of a directive that there was to be no contact between the two. What do you say to that? First of all, I don't believe the testimony was that it was done in collaboration. I believe Mr. McGore, the assistant principal, testified that he knew of the directive because he reviewed all of the white team minutes. And he reviewed those where the teachers- First of all, teachers are not policy makers. The line says that teachers do not rise to the level of being policy makers. Okay, for sake of argument, let's call it a policy. The purpose of that policy or directive was to keep Heather where she was supposed to be. They recognized that. At first she was going down there for study halls, but I believe Karen Kirshner, her homeroom teacher, said, well, you're not going to go there until you've finished your homework. So they said, you know, enough is enough. You can't go there, Heather. That's done. But there's still- that policy either has to be unconstitutional or it had to have led to unconstitutional conduct. And there's no evidence that that's what happened. I mean, even what's happening in the school, that's not where the sexual misconduct occurred. And it wasn't even- you know, the plaintiffs have argued to you and to the lower court that this gave Troy Mansfield his only avenue to get to Heather. That's not true. He called her every day. He emailed her every day. At times when her mother became suspicious, they backed off that. This was not his only avenue for her. This was not where the misconduct occurred. So even if that white teen directive is a policy, it doesn't get you to deliberate indifference. It doesn't get you to unconstitutional conduct. It's just not there. On the failure to train question, which is a subset of one of these claims that at least was analyzed, regardless of what the heading was to it, it was at least analyzed. Why wasn't Dr. Kent's expert testimony or expert report sufficient to pass summary judgment and get this matter to the jury? Well, I think as Judge Rappaport recognized, the majority of Dr. Kent's report was not based upon facts and not based upon the facts in this case. I don't know what particular issue you're getting at, but for example, the issue of the allegation that the assistant superintendent 20 years earlier had engaged in sexual misconduct, there's not evidence of that. And as I believe you said, Judge Fischer, it's too attenuated. But then what Dr. Kent did was then surmise, because he was the assistant superintendent, he must have written the policies, he must have been the one responsible for enforcing them, he must have been the one responsible for training. When Dr. McBeth testified, and the two superintendents during his administration testified, that none of that was true. The policies were created by the Pennsylvania School Boards Association. Dr. McBeth's only responsibility was to put them in the notebook and make sure they were updated. Well, how is that sufficient? I mean, you can't lay everything off in the Pennsylvania School Boards Association. No, no, no, I'm not doing that. I'm just saying you asked me why Dr. Kent's report was not sufficient. It was not sufficient because it was not based upon the facts of this case. It was based upon his conjecture and his speculation as to what the responsibilities were of the administrators, and he was wrong. But didn't he testify that there should have been a Title IX person designated who wasn't designated, that person that designated him had better control, and then he alluded to the assistant superintendent's prior problems as maybe a reason why he hadn't designated a person. But didn't the accumulation of his report provide that least factual basis as well as legal basis to get this past a summary judgment? If it had been based on facts, yes, but it wasn't based upon facts of the case. Well, it was based on facts. He talked about the knowledge that concededly the staff members had, and he said that if they had had this training that was available, it would have helped them see that what they were observing, and I don't think you have any objection to that. I don't think you're quarreling about the information that the staff had. He said if they had had this training, they would have known that there was an unreasonable risk here. Well, he's the one that said that you should be able to train people to spot a pedophile, which I take issue with, but however, when I took his deposition, he did admit that he could not say that any particular training would have prevented this from happening. So he may get you part of the way, but he doesn't get you to deliberate indifference, and he doesn't get you to that being a causal connection between that and the unconstitutional harm. Well, in any case where you have two wrongdoers, you can't say, or it's going to be rarely that you can say that it's more likely than not. Let's put it this way. Approximate cause, if there are two actors that play a role, a substantial role in causing an injury, they're both liable. Okay, I'm not sure who the two wrongdoers are you're talking about. Mansfield and the administration. Okay, but I don't think there's any evidence of wrongdoing. And Heather's injury. I understand. He could not say that this policy, more likely than not, would have kept Mansfield from violating this young woman. How could he? I mean, how could he? All he can say is, I know that if they had this training, it would have substantially have improved their ability to realize the significance of what they were saying. But again, I have to go back to what this Court has done in previous cases, and I think that if that were the standard, then I would never be before you. I could never have a case where a summary judgment would be granted if all they needed was Dr. Chester Kent to say they needed more training and they didn't have it. There has to be some standard. Is the question of whether there was any notice in the school that training was necessary in the first instance? Well, there wasn't. Yes, you're absolutely right. There's no evidence that they were, for Mansfield, engaging in this conduct or anyone else engaging in this conduct. Well, if we get back to the original position of the appellant, that every school district should have training. And what's wrong with that? And there was not here that every school district should have training so that teachers and administrators can spot potential pedophiles. I am certainly not going to disagree that every school district should have a certain amount of training about Title IX, about teachers not being permitted to engage in sexual relationships with students. I would never argue that to this court or to any court. But they had it here. They had it here. There was nothing in the record. The first day of teachers come back, they get a statement or something. That's not training. You're talking about someone saying, don't lie, don't cheat, don't steal, and don't violate students. That's not training. That doesn't indicate how to spot someone who's grooming someone for a sexual liaison. There was one of the policies, Your Honor, was I forget the title of it, but talking about child abuse generally. And within that policy, there are indicators spelled out that would have done what you're suggesting. So I think that they had the training here. Again, I'm not going to argue. I don't think you claimed in this. Did you claim in the district court that there, in fact, was training? Your position was training wasn't necessary. No, no, no. Because they were on notice of the necessity for training. No, I didn't argue training was not necessary. I argued that what training was given was sufficient. Okay. Absolutely. All right. I realize you do not represent him, but there is a judgment here against Mr. Mansfield, and it has been appealed, or has it been appealed? I was not aware that the judgment of Mr. Mansfield had been appealed. I don't know that. Well, there was summary judgment entered in Mansfield's favor. Yes, and the state claims the court did not take jurisdiction. He dismissed them, saying that he did not have jurisdiction over the state claims. But you're right. For the same reasons, I think all he said was for the same reasons that he granted summary judgment to my clients. He granted summary judgment to Troy. He dismissed them without prejudice. Well, it did want to take supplemental jurisdiction. Yes. So they're dismissed without prejudice. Well, I guess I better ask. Yeah. I think, because my time is running out, that I've covered everything, unless you have any other questions. Thank you. Thank you. Help me with that before. I believe what the court did, Your Honor, was basically say that the court no longer had jurisdiction over the state claims, which were the only claims that were remaining, which were remaining against Mansfield, and they would be remanded over to the state. And that was because he had entered summary judgment on the, from your perspective, on the bodily integrity due process claim. That's correct, Your Honor. And you're not appealing that. You're not. That's not before us. The only issues that we have right now of concern are with the school district and with Bedazic. Okay. Good. Thank you. I believe that in the discussion with defense counsel in this case, there were questions concerning the policies and training that the district had, a review of the record. And if you look at the record dealing with these issues, you will find that basically they were nothing but boilerplate do-good slogans that were not training, that did not create policies. In fact, the school district curiously had about an eight- to ten-page policy dealing with teacher-teacher, administrator-teacher harassment, but had nothing of the same like for teacher-student. And I believe that's very telling and very condemning of the school district because they thought it was important to protect the teachers from other teachers, but didn't feel or have a recognition to protect students from teachers. And, in fact, in this case, what you saw by the school district throughout this matter was that it was treating Heather as the danger to Mansfield and not the other way around. She was the 11-year-old vixen who was preying upon this man. Curiously, if your honors would also compare and contrast what happened with Mansfield's first victim, who was older than Heather, he lost the daily, day-to-day contact in the school with her when she left elementary school, and that relationship never became physical. They continued to have telephone conversations. They continued to have emails, but they never got to the point of the physical relationship because they were physically separated in the schools. It was the availability of this predator to be with her on a day-to-day basis, to groom her on a day-to-day basis, that set this up for the terrible end that occurred in this matter. Okay, Mr. Spiker, thank you very much, and we thank both counsel for excellent work on this case, and we'll take the matter under advisement. Thank you.